IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ASHLEY HEATHER CROW,<br><br>　　　　Plaintiff, | MEMORANDUM DECISION AND<br>ORDER ON PENDING MOTIONS |
| vs. | |
| UINTAH BASIN ELECTRONIC<br>TELECOMMUNICATIONS, a Utah<br>corporation, dba STRATA NETWORKS, et<br>al.,<br><br>　　　　Defendants. | Case No. 2:09-CV-1010 TS |

　　　　The Court has before it Plaintiff Ashley Heather Crow's ("Plaintiff") Motion to Amend

Complaint,[1] Plaintiff's Motion to Dismiss First Amended Counterclaim and Third Party Claim[2]

and Motion to Strike,[3] Plaintiff's Motion to Dismiss Counterclaim and Third Party Claim[4] and

---

　　　　[1]Docket No. 64.

　　　　[2]Docket No. 26.

　　　　[3]Docket No. 30.

　　　　[4]Docket No. 20.

1

Motion to Strike,[5] Defendant T.C. Landscape Service, Inc., dba Outback Rental and Supplies's ("TC") Motion to Dismiss[6] and/or Judgment on the Pleadings,[7] Defendant Justin Daniel Crow's ("J. Crow") Motion for Judgment on the Pleadings Pursuant to Rule 12(c),[8] and J. Crow's Special Motion to Strike Ashley Heather Crow's Sixth, Seventh, and Eighth Causes of Action and Request for Injunctive Relief Pursuant to Utah Code Ann. §§ 78B-6-1401 to 1405, aka "Anti-SLAPP Act."[9]

Having considered the motions, the Court renders the following decision.

## I. RELEVANT BACKGROUND

The present action is rooted in a domestic dispute between Plaintiff and J. Crow. In her Complaint, Plaintiff alleges that J. Crow and TC obtained a record of Plaintiff's text messages from Defendant Uintah Basin Electronic Telecommunications ("STRATA") in violation of the Stored Communications Act ("SCA").[10] Plaintiff further alleges that STRATA violated the SCA by providing these records to Defendants Crow and TC.

The parties have filed several motions in this dispute which are now ripe for decision. In sum, Plaintiff has moved the Court to dismiss J. Crow's counterclaims and third party claims

---

[5]Docket No. 22.

[6]Docket No. 50.

[7]Docket No. 52.

[8]Docket No. 28.

[9]Docket No. 24.

[10]18 U.S.C. §§ 2701-2711 (1986).

because the Court lacks subject matter jurisdiction over these claims and the pleadings are inadequate under Fed.R.Civ.P. Rule 8. Defendants Crow and TC move the Court to dismiss Plaintiff's SCA claims, or in the alternative render judgment in their favor on Plaintiff's SCA claims, because Plaintiff's Complaint fails to state a claim for which relief can be granted. J. Crow further moves the Court to strike Plaintiff's causes of action for intentional infliction of emotional distress, intrusion upon seclusion, publicity given to private life, and request for an injunction because these claims violate Utah's Anti-SLAPP statute.[11] Lastly, Plaintiff moves the Court to amend her Complaint to include Tim C. Crow as defendant and add additional causes of action.

## II. DISCUSSION

A. PLAINTIFF'S MOTION TO AMEND

*1. Fraud*

Plaintiff asks leave of the Court to amend her Complaint to add Tim C. Crow as a defendant and add new causes of action. Defendant TC argues that the Court should deny the motion because the proposed amendments would be futile.

Fed.R.Civ.P. 15(a) provides that, after a responsive pleading has been served, "a party may amend its pleadings only with the opposing party's written consent or the court's leave."[12] "The Court should freely give leave when justice so requires."[13] The Tenth Circuit has made

---

[11] Utah Code Ann. § 78B-6-1401 et seq.

[12] Fed.R.Civ.P. 15(a)(2).

[13] *Id.*

3

clear, however, that leave to amend need not be given when amendment would be futile.[14]  A proposed amendment would be futile when the complaint, as amended, would be subject to dismissal.[15]

Defendant argues that Plaintiff's newly alleged fraud claim fails to meet the heightened pleading standard under Fed.R.Civ.P. 9(b) applicable to all claims for fraud.  Rule 9(b) requires all allegations of fraud or mistake be pled with particularity.  As the Tenth Circuit has explained, "[s]imply stated, a complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"[16]  "'At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud.'"[17]

In evaluating Plaintiff's allegations under the heading "Fraud," it is difficult to determine if Plaintiff is actually attempting to plead a stand-alone claim for fraud, or rather providing additional details of Defendants' behavior.  Although Plaintiff's Complaint provides allegations of fraudulent activities, the proposed Amended Complaint fails to plead a complete cause of action for fraud.  It appears from Plaintiff's Reply Memorandum in Support of her Motion to Amend that Plaintiff was not actually attempting to add a separate fraud cause of action, but

---

[14]*See Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

[15]*Id.*

[16]*Schwartz v. Celestial Seasoning, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

[17]*U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

rather to more fully plead her contention that STRATA's consent to release the electronic communications was obtained through J. Crow and TC's fraudulent representations. As will be discussed in the section that follows, Plaintiff's contention that STRATA's consent was obtained through fraud is essential to the survival of her SCA claims against J. Crow and TC.

Based on the foregoing, while Plaintiff's newly alleged fraud claim would not withstand a motion to dismiss as a stand-alone cause of action, they are adequately pled to support her contention that J. Crow and TC's consent was obtained through fraud. Therefore, the Court will grant Plaintiff's motion to amend on the understanding that the allegations do not plead a stand-alone cause of action for fraud, but only serve to support her theory that Defendants obtained the electronic communications by fraud.

  2. *SCA Claims*

In TC's opposition to Plaintiff's Motion to Amend Complaint, TC also challenges the legal adequacy of Plaintiff's SCA claims against it and Tim C. Crow. TC argues that Plaintiff cannot prevail on her SCA claims because TC and Tim C. Crow are not providers of communication services and therefore not liable under § 2701 of the SCA. TC's contention, however, is based upon 18 U.S.C. § 2702—not § 2701. Under § 2702, liability is limited to providers of electronic communication services. § 2701, however, is not so limited. Under § 2701, "*whoever* intentionally accesses without authorization a facility through which an electronic communication service is provided" can be liable. Thus, Plaintiff's amended SCA claims are legally cognizable and would survive a motion to dismiss. Therefore, the proposed amended complaint as to these claims is proper.

Because the proposed amended complaint would withstand a motion to dismiss, and the Defendants have brought forth no reason to suspect they would be unduly prejudiced if leave to amend was granted, the Court will grant Plaintiff's Motion to Amend her SCA claims.

B.   DEFENDANTS' MOTION TO DISMISS

Defendants J. Crow and TC move the Court to dismiss, or in the alternative, render judgment in their favor on Plaintiff's SCA claims against them because they fail as a matter of law. Although J. Crow and TC's motions are largely mooted by the amended complaint, the contentions in the motions still merit further discussion for purposes of this Order.

In considering a motion to dismiss under Rule 12(b)(6) or a judgment on the pleadings under Rule 12(c), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[18] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."[19] All well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party.[20] But, the court "need not accept . . . conclusory allegations without supporting factual averments."[21] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but

---

[18] *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[19] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[20] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[21] *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[22] The Supreme Court has explained that a plaintiff must "nudge[ ][his] claims across the line from conceivable to plausible" to survive a motion to dismiss.[23]

Defendants argue that Plaintiff's SCA claims fail because their access to her records were authorized by STRATA.[24] Under subsection (a) of § 2701,

> whoever intentionally accesses without authorization a facility through which an electronic communication service is provided . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.[25]

Defendants argue that the plain language of this statute dictates that, so long as a party has authorization from the facility of electronic communication service, the party may access the facility with impunity. Defendants argue that this reading is bolstered when read in conjunction with the statutory exceptions, which in part provides that the SCA "does not apply with respect to conduct authorized by the person or entity providing a wire or electronic communications service."[26]

In opposition, Plaintiff argues that courts interpreting the SCA have limited the scope of

---

[22]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[23]*Twombly*, 550 U.S. at 547.

[24]As noted in Plaintiff's reply, Defendant TC focuses on Plaintiff's First Cause of Action, which is not alleged against it. As these claims are effectively identical to Plaintiff's Second Cause of Action—which is pled against Defendant TC—the Court will construe TC's arguments as applying to Plaintiff's Second Cause of Action.

[25]18 U.S.C. § 2701(a).

[26]*Id.* § 2701(c).

this exception when consent from the communication service provider was obtained through fraud. As the Ninth Circuit reasoned in *Theofel v. Farey-Jones*:

> [p]ermission to access a stored communication does not constitute valid authorization if it would not defeat a trespass claim in analogous circumstances. Section 2701(c)(1) therefore provides no refuge for a defendant who procures consent by exploiting a known mistake that relates to the essential nature of his access.
>
> . . .
>
> Allowing consent procured by known mistake to serve as a defense would seriously impair the statute's operation. A hacker could use someone else's password to break into a mail server and then claim the server "authorized" his access. Congress surely did not intend to exempt such intrusions—indeed, they seem the paradigm of what it sought to prohibit.[27]

In Plaintiff's initial complaint, Plaintiff failed to adequately plead this limitation to § 2701(c)(1). As noted above, Plaintiff has now filed a proposed amended complaint which adequately pleads this limitation. As this Court will grant the motion to amend, the prior contention that fraudulent consent is not adequately pled is now moot. Therefore, the Court will deny Defendants' Motion to Dismiss because Plaintiff has adequately pled her SCA claims.

C.  PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STRIKE

Plaintiff moves the Court to dismiss J. Crow's amended counterclaims and third party complaint for lack of subject matter jurisdiction and failure to state a claim under Rule 12(b)(6).[28] Plaintiff further requests that the Court strike certain identified allegations she argues are

---

[27]359 F.3d 1066, 1073-74 (9th Cir. 2004).

[28]Plaintiff also filed a motion to dismiss J. Crow's counterclaims prior Defendant's amendments. Docket No. 20. Once J. Crow filed his amended counterclaims, Plaintiff re-filed her motion, rendering her prior filing moot. Therefore, the Court will deny Plaintiff's first motion to dismiss without discussion.

improper under Rule 12(f).

J. Crow alleges that this Court has proper jurisdiction over his counterclaims because: (1) he and Third-Party Defendant James Ammon Jensen are of diverse citizenship, rendering jurisdiction proper under 28 U.S.C. § 1332 diversity jurisdiction; and (2) his claims arise out of the same case or controversy alleged in Plaintiff's Complaint, rendering jurisdiction proper under 28 U.S.C. § 1367 supplemental jurisdiction.

In asserting diversity jurisdiction, J. Crow improperly focuses his analysis only on his citizenship vis-a-vis James Ammon Jensen. However, under long-established precedent, "diversity jurisdiction requires complete diversity of citizenship as between all plaintiffs and all defendants."[29] J. Crow and Plaintiff/Counter-claim Defendant Ashley Heather Crow are citizens of the same state. Therefore, diversity is lacking and J. Crow's assertion of diversity jurisdiction fails.

Defendant argues that even if diversity is lacking, the Court has jurisdiction over his claims because they arise from the same case or controversy as the claims alleged in Plaintiff's Complaint. Thus, Defendant argues, jurisdiction is proper under this court's supplemental jurisdiction.[30]

---

[29]*Connectu LLC v. Zuckerberg*, 522 F.3d 82 (1st Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806)).

[30]*See* 28 U.S.C. 1367. J. Crow further argues that jurisdiction is proper because his claims are compulsory counterclaims under Fed.R.Civ.P. 13(a). While some courts determine supplemental jurisdiction over counterclaims on this basis, *see, e.g., Adamson v. Dataco Derex, Inc.*, 178 F.R.D. 562, 564 (D. Kan. 1998), the Tenth Circuit has not yet adopted this approach. Therefore the Court will decide this issue under the well-established supplemental jurisdiction standard.

Under 28 U.S.C. § 1367(a), a court may exercise supplemental jurisdiction over claims which do not fall within the court's original jurisdiction where those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."[31] As noted by the Supreme Court,[32] § 1367(a) codified the standard first announced in *United Mine Workers of America v. Gibbs*,[33] which held that federal and state claims which share a common nucleus of operative facts should be tried together.[34]

Plaintiff's federal claims arise under the SCA. The specific claims involve the issue of whether J. Crow and TC violated the SCA by obtaining a record of Plaintiff's text messages and whether Plaintiff's cell phone provider (STRATA) violated the SCA by providing such messages. By contrast, J. Crow's counterclaims involve a variety of interspousal torts.

---

The Court further notes that the two approaches appear to be the same analysis under different names. Under the Rule 13(a) approach, the Court would determine whether the counterclaim arose out of the "transaction or occurrence that is the subject matter of the opposing party's claim," and was therefore a compulsory counterclaim. Fed.R.Civ.P. 13(a). If the Court found the claim to be compulsory, supplemental jurisdiction would be proper. *See Unique Concepts, Inc. v. Manuel*, 930 F.2d 573, 574 (7th Cir. 1991) ("A federal court has supplemental jurisdiction over compulsory counterclaims."). If not, and the counterclaim was merely permissive, the claim would require its own jurisdictional basis. *See id.* ("Permissive counterclaims, however, require their own jurisdictional basis."). Thus, whether supplemental jurisdiction is proper under Rule 13(a) hinges on whether the counterclaim arose out of the same transaction or occurrence; or in the words of 28 U.S.C. § 1367(a), whether the claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

[31]*Id.*

[32]*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997).

[33]383 U.S. 715 (1966).

[34]*Id.* at 725.

Specifically, J. Crow alleges against Plaintiff battery for unwanted and fraudulently consented to sexual contact; as to both Counter Defendants, intentional and negligent infliction of emotional distress; and as to Jason Ammon Jenson, alien of affection.

J. Crow argues that his claims share a common nucleus of operative facts because these alleged torts either led him to seek access to Plaintiff's text message logs, or he discovered these alleged torts by reading her text message logs. He further argues that the same evidence—the text messages—will be used to prove his claims against Plaintiff and James Ammon Jensen.

While J. Crow's assertion that the text messages will be important evidence in both parties' claims is well-taken, how the text messages will be used is rather different. For Plaintiff's SCA claims, the content of Plaintiff's text messages is wholly irrelevant. For purposes of the SCA claims, the text messages will only be relevant to prove that a stored electronic communication of Plaintiff's was accessed—there will be no need to engage in an evaluation of what text these messages actually contain. By contrast, J. Crow's claims will undoubtedly involve careful analysis of the contents of these text messages. Moreover, additional testimonial and other evidence wholly outside the purview of the SCA claims will likely be necessary to prove J. Crow's case. Thus, J. Crow's counterclaims will only prove to complicate the issues involved in the case. Therefore, the Court will decline to exercise supplemental jurisdiction over these claims.

Because the Court lacks jurisdiction over J. Crow's counterclaims, the Court will dismiss his counterclaims.

D.     J. CROW'S SPECIAL MOTION TO STRIKE

J. Crow moves the Court to strike Plaintiff's claims for intentional infliction of emotional distress, intrusion upon seclusion, publicity given to private life, and request for an injunction because these claims violate Utah's Anti-SLAPP Act.[35] The Court finds this motion to be both procedurally improper and lacking in merit. Under Utah's Anti-SLAPP Act, the proper procedure for dismissing a cause of action under the Anti-SLAPP Act is to file a motion for judgment on the pleadings to determine whether "the primary reason for filing of the complaint was to interfere with the first amendment right of the defendant."[36] Instead of following this procedure, J. Crow has filed this motion as a motion to strike—a procedure not contemplated by the statute.

Even if the Court were to liberally construe Defendant's motion as one for judgment on the pleadings, J. Crow's motion is based upon a misconstrual of the statute. Defendant argues that Plaintiff's claims violate the Anti-SLAPP Act because her claims are an attempt to chill his efforts to defend himself in state court. J. Crow argues that his right to participate in judicial proceedings is protected under the Anti-SLAPP Act and Plaintiff's attempts to dissuade him from pursuing such participation by filing these claims against him are a direct violation of the Anti-SLAPP Act.

A close reading of Utah's Anti-SLAPP Act reveals that the Act is designed to protect one's participation in the executive and legislative branches, not the judiciary. The Act's

---

[35] Utah Code Ann. § 78B-6-1401.

[36] *Id.* § 78B-6-1404.

12

definitions section includes two definitions for rather similar looking, but quite different terms. As used in the statute "[a]ction involving public participation in the process of government" is defined as "any lawsuit, cause of action, claim, cross-claim, counterclaim, or other judicial pleading or filing requesting relief to which this act applies."[37] "Process of government," when used in isolation, is defined as "the mechanisms and procedures by which the legislative and executive branches of government make decisions, and activities leading up to the decisions, including the exercise by a citizen of the right to influence those decisions under the First Amendment to the U.S. Constitution."[38] The statute provides that a defendant who believes the action was filed against him because of his participation in the "process of government"—i.e., his participation in the legislative or executive process—can file a motion for judgment on the pleadings under Rule 12(c).[39] Thus, the statute only seeks to protect those who are sued because of their participation in the legislative or executive process, not in judicial proceedings.

> This is precisely the reading adopted by the Utah Supreme Court:
>
> When the Utah Legislature wrote the Anti-SLAPP Act, it was at liberty to define the scope of activities to be covered by it. It was free to limit the Act's applicability to particular forums and to particular means of communication, but the legislature did not choose to use either the setting or the means of communication as a criterion for assessing the applicability of the Act. Rather, the Act is fashioned to link its applicability to the context in which the action in question took place: participating in the process of government by exercising the right to influence legislative and executive decisions.[40]

---

[37]*Id.* § 78B-6-1402(1).

[38]*Id.* § 78B-6-1402(5).

[39]*Id.* § 78B-6-1403.

[40]*Jacob v. Bezzant*, 212 P.3d 535, 541 (Utah 2009).

J. Crow's assertion that Utah's Anti-SLAPP Act applies to participation in judicial proceedings is unsupported in both the text of the statute and Utah case law interpreting the statute. Therefore, the motion is denied.

III. CONCLUSION

Based on the foregoing, it is therefore

ORDERED that Plaintiff's Motion to Amend Complaint (Docket No. 64) is GRANTED. It is further

ORDERED that Plaintiff's Motion to Dismiss First Amended Counterclaim and Third Party Claim (Docket No. 26) is GRANTED and Plaintiff's Motion to Strike (Docket No. 30) is DENIED as MOOT. It is further

ORDERED that Plaintiff's Motion to Dismiss Counterclaim and Third Party Claim (Docket No. 20) and Motion to Strike (Docket No. 22) are DENIED as MOOT. It is further

ORDERED that Defendant TC's Motion to Dismiss (Docket No. 50) and Motion for Judgment on the Pleadings (Docket No. 52) are DENIED as MOOT. It is further

ORDERED that Defendant J. Crow's Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (Docket No. 28) is DENIED as MOOT. It is further

ORDERED that Defendant J. Crow's Special Motion to Strike Ashley Heather Crow's Sixth, Seventh, and Eighth Causes of Action and Request for Injunctive Relief Pursuant to Utah Code Ann. §§ 78B-6-1401 to 1405, aka "Anti-SLAPP Act" (Docket No. 24) is DENIED.

DATED   December 3, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge